**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MEGAN B. QUIRK**
Quirk, Rivers & Hunter
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana



FILED

Apr 30 2012, 9:41 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| J.M., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1109-JV-817 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Richard A. Dailey, Judge
The Honorable Brian Pierce, Master Commissioner
Cause No. 18C02-1103-JD-69

**April 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

J.M. appeals his juvenile delinquency adjudication for what would be Class B felony child molesting if committed by an adult. Ind. Code § 35-42-4-3(a) (2007). We affirm.

## ISSUES

J.M. raises two issues, which we restate as:

I.      Whether the evidence is sufficient to sustain the juvenile court's true finding for Class B felony child molesting.

II.     Whether the juvenile court abused its discretion by committing J.M. to the Indiana Department of Correction.

## FACTS AND PROCEDURAL HISTORY[1]

In the summer of 2010, six-year-old J.B. regularly visited his father at his home in Muncie. J.M., who was thirteen years old, lived next door. J.B. was friends with J.M.'s younger brothers and would often go to their house to play. J.B. trusted J.M. and thought of him as an older role model. One day that summer, J.B. went to J.M.'s house, and nobody except J.M. was there. J.M. took off his pants and his underwear and told J.B. to take off his clothes. J.M. then put his "wrong spot" inside of J.B.'s buttocks. Tr. p. 7. During his testimony, J.B. identified his "wrong spot" as his "peepee" and what he uses to "pee." *Id.* at 10. J.M. also ordered J.B. to suck his "wrong spot," and after J.B. did so, J.M. sucked J.B.'s "wrong spot." Something white came out of J.M.'s "wrong spot." When the ordeal was over, J.M. told J.B. to put his clothes back on, and they played a

---

[1] The State filed a Motion to Compel Appellant to Comply with Administrative Rule 9(G)(4). We granted this motion by separate order.

video game. J.M. then told J.B. to leave quickly because J.M.'s mother would be home soon.

In December 2010, J.B. told his sister about what had happened, and his sister told their mother. J.B. was interviewed by the police and physically examined by a sexual assault nurse examiner, who found no trauma at that time.

With the juvenile court's authorization, the State filed a petition alleging J.M. to be a delinquent child for committing what would be Class B felony child molesting if committed by an adult. J.M. entered a denial at the initial hearing.

J.B., his mother, and an investigating officer testified at the denial hearing. J.M. also testified, stating that he was never alone in the house with J.B. and denying any improper conduct. In making its determination, the juvenile court noted that it did not find J.M. credible:

> Alright I've got to be quite honest with you, a lot of times I take these cases under advisement. . . . [J.M.] in this case all[ ] I have to do is decide between which witness I believe. That's between you and the victim. When you sat on that stand you were an arrogant, pompous, disrespectful and I'm absolutely now satisfied, dishonest person. Without a doubt, beyond reasonable doubt you are hereby found delinquent as to Child Molesting [as] a Class B Felony . . . .

*Id.* at 50. At a subsequent dispositional hearing, the juvenile court committed J.M. to the Department of Correction. J.M. now appeals.

DISCUSSION AND DECISION

I. SUFFICIENCY OF THE EVIDENCE

J.M. contends that the evidence is insufficient to sustain his adjudication for Class B felony child molesting. When reviewing the sufficiency of the evidence with respect to

3

a juvenile adjudication, we do not reweigh the evidence or judge the credibility of the witnesses. *D.W. v. State*, 903 N.E.2d 966, 968 (Ind. Ct. App. 2009), *trans. denied*. We look only to the probative evidence supporting the adjudication and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the adjudication, it will not be set aside. *Id.* The uncorroborated testimony of one witness may be sufficient by itself to sustain an adjudication of delinquency on appeal. *Id.* It is the function of the trier of fact to resolve conflicts in testimony and to determine the weight of the evidence and the credibility of the witnesses. *K.D. v. State*, 754 N.E.2d 36, 39 (Ind. Ct. App. 2001).

To adjudicate J.M. a delinquent for committing what would be Class B felony child molesting if committed by an adult, the State had to prove beyond a reasonable doubt that J.M. performed deviate sexual conduct with J.B., a child under fourteen years of age. Appellant's App. p. 10; *see* Ind. Code § 35-42-4-3(a).

J.B., who was six years old at the time of the offense, testified without equivocation that J.M. put his "wrong spot" inside of J.B.'s buttocks and later sucked J.B.'s "wrong spot." Despite this clear evidence, J.M. questions J.B.'s credibility and asserts that the juvenile court "did not resolve conflicts in testimony at the fact-finding hearing." Appellant's Br. p. 6. He adds that "[e]ssentially, because the juvenile court didn't like [J.M.], he was adjudicated [a] delinquent." *Id.* at 10. Contrary to J.M.'s argument, the juvenile court did resolve conflicts in the testimony. The court stated that it had to decide whether to believe J.B. or J.M. and noted that J.M.'s demeanor on the

4

witness stand convinced the court that J.M. was not being honest. There was nothing improper about this determination. *See Black v. State*, 256 Ind. 487, 269 N.E.2d 870, 872 (1971) ("The trier of fact has a right to observe the demeanor of any witness on the witness stand in making its determination as to whether or not the testimony of that witness is to be believed."). J.M.'s arguments on appeal are nothing more than an invitation to reweigh the evidence, which we will not do.

Within his sufficiency argument, J.M. makes a one-sentence assertion that the testimony of J.B.'s mother and the investigating officer constitute hearsay. J.M. has waived this issue on two grounds. First, he failed to make an objection to the juvenile court. *See N.W.W. v. State*, 878 N.E.2d 506, 509 (Ind. Ct. App. 2007) (determining that juvenile waived any objection to admissibility of show-up identification evidence by failing to make timely and specific objections at denial hearing), *trans. denied*. Second, he fails to develop any argument or provide any citations to the record informing us which specific statements he is challenging. *See* Ind. Appellate Rule 46(A)(8)(a); *Lyles v. State*, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005) (waiving issue for failure to develop a cogent argument or provide adequate citations to authority and portions of record), *trans. denied*.

The evidence is sufficient to show that J.M. committed what would be Class B felony child molesting if committed by an adult.

## II. DISPOSITION

J.M. next contends that the juvenile court abused its discretion by committing him to the Department of Correction. The choice of the specific disposition of a juvenile

adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that discretion. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. *Id.* The juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles. *Id.* The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *Id.*

Indiana Code section 31-37-18-6 (1997) provides:

If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
    (1) is:
        (A) in the least restrictive (most family like) and most appropriate setting available; and
        (B) close to the parents' home, consistent with the best interest and special needs of the child;
    (2) least interferes with family autonomy;
    (3) is least disruptive of family life;
    (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
    (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Although this statute generally requires placement in the least restrictive setting, it also contains language indicating that a more restrictive placement might be appropriate under certain circumstances. *J.S.*, 881 N.E.2d at 28-29. Placement in the least restrictive setting is required only "[i]f consistent with the safety of the community and the best interest of the child." Ind. Code § 31-37-18-6. The statute thus recognizes that in certain

6

situations the best interest of the child is better served by a more restrictive placement. *J.S.*, 881 N.E.2d at 29.

J.M. was adjudicated a delinquent for forcing six-year-old J.B., who thought of him as an older role model, to submit to anal and oral sex. The probation department noted the serious nature of the offense and recommended placement at the Department of Correction. The predispositional report noted that J.M. is at high risk of reoffending and that private placement would put other residents at risk. At the dispositional hearing, the probation officer reiterated, "We are . . . concerned that if [J.M.] were placed in a facility such as the YOC that there's a possibility that the other children that reside there would be put in danger." Tr. pp. 53-54. The probation department's recommendation indicates that a less restrictive placement is not consistent with the safety of the community.

Moreover, J.M.'s juvenile history shows that he has been afforded leniency in the past. In December 2008, J.M. was alleged to be incorrigible. In that case, he was given a warning and released. In September 2009, J.M. was alleged to have committed arson. That charge was reduced to criminal mischief and criminal recklessness. Upon being adjudicated a delinquent for criminal mischief and criminal recklessness, J.M. was ordered to remain in the custody of his father and placed on probation for one year. He was on probation when he committed the delinquent act in this case. In November 2010, a few weeks before J.B. disclosed what J.M. had done to him, J.M. was alleged to have inhaled toxic vapors. He was adjudicated a delinquent and, a few weeks before the denial hearing in this case, given sixty days suspended at Henry County Youth Center and one year of probation. J.M.'s juvenile history shows an inability to adjust his behavior.

7

Given the seriousness of this offense, the high risk that he will reoffend, his juvenile history, including the leniency afforded to him in the past, and the fact that he was on probation when he committed this offense, the juvenile court was within its discretion in determining that a more restrictive placement is necessary for J.M.'s treatment and rehabilitation. We conclude that the juvenile court did not abuse its discretion by committing J.M. to the Department of Correction.

## CONCLUSION

For the reasons stated, we affirm the judgment of the juvenile court.

Affirmed.

BAKER, J., and BRADFORD, J., concur.