v.

STATE of Indiana, Appellee–Petitioner.

No. 15A01–0706–JV–276.

Court of Appeals of Indiana.

Feb. 18, 2008.

George A. Leininger, Collins, Hensley & Wynn, Madison, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ann L. Goodwin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Today we address for the first time whether a juvenile court abused its discretion by placing a delinquent juvenile who was in the United States illegally with the Department of Correction (DOC) instead of returning him to his native country. Appellant-respondent J.S. appeals his placement with the DOC following the juvenile court's true finding that he committed an act that would constitute class A felony dealing in a schedule I controlled substance within 1,000 feet of a school had it been committed by an adult. Specifically, J.S.—a Mexican national who was within the United States illegally—contends that the juvenile court abused its discretion by placing him with the DOC instead of returning him to Mexico. Concluding that the juvenile court did not abuse its discretion, we affirm.

### FACTS

Fifteen-year-old J.S. illegally entered the United States for the first time in February 2006. He was eventually arrested for driving without a license in Covington, Kentucky and returned to Mexico without further punishment in April 2006. Appellant's App. p. 15–16.

On or about May 17, 2006, J.S. illegally reentered the United States. On May 24, 2006, J.S. was arrested for selling three balloons containing heroin to a confidential informant working for the Dearborn County Sheriff's Department. The controlled buy occurred across the street from Lawrenceburg High School, and the confidential informant was an exotic dancer who J.S. had previously met at a local strip club. At the time of his arrest, J.S. had approximately $1,300 on his person. He initially identified himself to officers as "Carlos Mallorga" and provided a counterfeit Mexican driver's license indicating that he was eighteen years old.

On November 1, 2006, the State filed a delinquency petition alleging that J.S. had committed what would be class A felony dealing in a schedule I controlled substance within 1,000 feet of a school if committed by an adult. The State filed a motion for waiver of juvenile jurisdiction on November 3, 2006. A waiver hearing was held on December 27, 2006, and the juvenile court denied the State's motion on January 11, 2007.

A fact-finding hearing was held on January 29, 2007, and J.S. testified that he had been sexually active with the confidential informant, that he had acquired heroin for her on two additional occasions before his arrest, and that the two of them had previously injected heroin together. J.S. admitted that he brought heroin to the arranged location on May 24, 2006, with the intent to sell it. The juvenile court entered a true finding on the State's allegations and adjudged J.S. to be a delinquent.

A dispositional hearing was held on April 19, 2007, and J.S.'s father testified from Mexico via telephone that he and J.S.'s mother had not known of their son's plan to travel to the United States in May and did not know his whereabouts until he was arrested. J.S.'s father expressed his desire for J.S. to return to Mexico to study computers or possibly join the military. J.S. testified and again admitted selling heroin to the confidential informant, ac-

knowledging that he did so voluntarily. J.S.'s probation officer recommended that J.S. be placed with the DOC, where he could attend school and receive services to address his substance abuse problem. After hearing the evidence, the juvenile court stated:

> Based upon the situation this young man has at home, I'm quite frankly finding that given all the circumstances I've heard, that there will not be guidance, there will not be control, he was able to leave and no action was taken until he called approximately a week later, no services would be provided, the risk of you not learning your lesson and coming back here is too great. The recommendation that has been made by Probation today, is accepted, because I think it is the right thing to do to provide the services that you need, the education that you need to make sure that you understand this cannot happened again, you must change, you must change now. I'm ordering you will be committed to the Indiana Department of Correction, Juvenile Division. . . .

*Id.* at 263. J.S. now appeals.

### DISCUSSION AND DECISION

■ J.S. argues that the juvenile court erred by placing him with the DOC because it is not the least restrictive option. Specifically, J.S. argues that his placement does not comply with Indiana Code section 31–37–18–6 because this is his first true finding, his family wants him to be brought back to Mexico, and he was "set up by a confidential informant." Appellant's Br. p. 4. Therefore, J.S. requests that we reverse the juvenile court and order him returned to Mexico.

■ In determining whether the juvenile court properly placed J.S. with the DOC, we note that the choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that discretion. *E.L. v. State,* 783 N.E.2d 360, 366 (Ind.Ct.App.2003). The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *C.C. v. State,* 831 N.E.2d 215, 216–17 (Ind.Ct.App.2005). An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. *Id.* Hence, the juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles. *C.T.S. v. State,* 781 N.E.2d 1193, 1203 (Ind. Ct.App.2003).

Indiana Code section 31–37–18–6 sets forth the following factors that a juvenile court must consider when entering a dispositional decree:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> (A) in the least restrictive (most family like) and most appropriate setting available; and
>
> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Without question, the statute requires the juvenile court to select the least restrictive

placement in most situations; however, the statute contains language that reveals that a more restrictive placement might be appropriate under certain circumstances. *K.A. v. State,* 775 N.E.2d 382, 387 (Ind.Ct. App.2002). That is, the statute requires placement in the least restrictive setting only "[i]f consistent with the safety of the community and the best interest of the child." I.C. § 31–37–18–6. Thus, the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement. *K.A.,* 775 N.E.2d at 386–87.

J.S. implores us to find that the juvenile court abused its discretion by placing him with the DOC because a less restrictive option was available—he could have been returned to Mexico. However, it is well settled that "there are times when commitment to a suitable public institution *is in the best interest of the juvenile and society.*" *D.S. v. State,* 829 N.E.2d 1081, 1085 (Ind.Ct.App.2005) (emphasis added). This is one of those times. J.S. had previously been returned to Mexico without further punishment after committing a crime in Kentucky in February 2006. However, approximately one month later, J.S. illegally reentered the United States, this time with a counterfeit Mexican driver's license. During the week J.S. was in the Dearborn County area prior to his arrest, the fifteen-year-old became sexually involved with an exotic dancer, purchased heroin three times, and injected heroin at least twice. Ultimately, J.S. was arrested for selling heroin within 1,000 feet of a school, an offense that would have exposed him to between twenty and fifty years of incarceration had it been committed by an adult. Ind.Code § 35–50–2–4.

J.S. argues that his placement with the DOC was improper because the confidential informant "set him up." Appellant's Br. p. 4. However, J.S. asserted an entrapment defense at his hearing and the juve-nile court ultimately determined that he had presented insufficient evidence supporting that claim. Appellant's App. p. 73. J.S. also emphasizes that Indiana Code section 31–37–18–6 provides that juveniles should be placed in the least restrictive environment that "least interferes with family autonomy." However, while we are cognizant of J.S.'s family in Mexico, he chose to leave them and illegally reenter the United States. Additionally, Indiana Code section 31–37–18–6 explicitly provides that a dispositional decree shall be "consistent with the safety of the community and the best interest of the child." Here, the juvenile court found that placement with the DOC was in J.S.'s best interests "due to his rehabilitation needs and the lack of concern by said child's family about his location and welfare." Appellant's App. p. 95. The juvenile court also found that, given the serious nature of the crime and the likelihood that J.S. would illegally reenter the United States if returned to Mexico, the "risk to the community [is] extremely high." *Id.*

While J.S. asks us to reverse the juvenile court and order him returned to Mexico, we stress that he previously received that lenient penalty and, instead of leading a law abiding life in his own country, chose to illegally reenter the United States within one month. Given the serious nature of J.S.'s drug-related offense, the likelihood that he will reoffend, and the juvenile court's determination regarding his best interests, we do not find that the juvenile court abused its discretion by placing J.S. with the DOC.

The decision of the juvenile court is affirmed.

RILEY, J., and MAY, J., concur.