**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| N.L., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 52A02-1110-JV-1051 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MIAMI SUPERIOR COURT
The Honorable Daniel C. Banina, Judge
Cause Nos. 52D02-1105-JD-16, 52D02-1010-JD-52 & 52D02-1012-JD-57

**February 27, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

N.L. appeals his commitment to the Indiana Department of Correction. Specifically, he contends that it is not the least restrictive and most appropriate placement for him. In light of N.L.'s growing juvenile history, conduct while on probation, and failure to participate in services offered to him, we conclude that the juvenile court did not abuse its discretion in committing him to the DOC. We affirm.

**Facts and Procedural History**

In March 2011, the Miami County Juvenile Court adjudicated sixteen-year-old N.L. a delinquent child and placed him on probation after he admitted to three offenses that would be crimes if committed by an adult: burglary, theft, and possession of marijuana. Appellant's App. p. 14. The terms of N.L.'s probation required that N.L. not commit another delinquent act or criminal offense, attend school and maintain good grades, report to the probation office as ordered, and observe court-ordered curfew. N.L. was also required to participate in home-based services and perform fifty hours of community service.

Just two months later, on May 6, the State filed a petition to modify N.L.'s probation based upon allegations of harassment and intimidation stemming from N.L's interaction with a male acquaintance. On May 9, the State filed a delinquency petition in the new case alleging three offenses: two counts of intimidation, Class A misdemeanors if committed by an adult, and one count of harassment, a Class B misdemeanor if committed by an adult. *Id.* at 23.

An initial hearing on the State's petitions was set for May 18, 2011. N.L. did not appear at the hearing, and his whereabouts were unknown for more than four months. Upon returning to his father's home in September, N.L. was transported to the Kinsey Youth Center in Kokomo. The State filed a second petition for modification of N.L.'s probation on September 12, alleging violations of N.L.'s probation occurring while N.L.'s whereabouts were unknown, including resisting law enforcement and failing to attend school, report to the probation department, abide by curfew, participate in services, and complete community service. *Id.* at 42. N.L. subsequently admitted to violating the terms of his probation as alleged in the State's May 6 and September 12 petitions to modify his probation. N.L. also admitted to the allegations of delinquency in the State's petition filed on May 9.

A dispositional hearing was held in October 2011. At the hearing, N.L.'s probation officer, Mandy Miller, recommended that N.L. be placed in the DOC. Miller described N.L. as becoming "increasingly aggressive," noting that he had been arrested twice since being placed on probation. Tr. p. 11. Miller also described N.L.'s refusal to participate in services, stating that "the goal of the juvenile system is to rehabilitate [N.L.] and if we can't get him to participate in services and complete those programs we're not providing any sort of rehabilitation." *Id.* at 12. In the DOC, however, Miller explained that N.L. would have no choice but to participate in services and would have educational, vocational, behavioral, and substance-abuse treatment programs available to him. *Id.* Educational programs were particularly important because N.L. was "very

3

behind in school" after being expelled and had special educational needs according to an individualized educational plan. *Id.*

When N.L.'s counsel asked about alternative placements for N.L., Miller explained that N.L. had behaved well while at Kinsey, a secure placement, and this supported her belief that "[N.L.] needs to be somewhere where he is required to do things." *Id.* at 20. According to Miller, alternative placements such as residential care and home detention would not meet this criteria. N.L.'s father and N.L. also testified, and both expressed their opposition to a DOC placement, volunteering instead the option of in-home detention.

After hearing the recommendation of Miller and testimony from N.L. and his father, the trial court summarized the evidence relevant to its decision. As the court explained, N.L. had admitted to theft, burglary, and possession of marijuana before the events giving rise to the current proceedings. Further, N.L. did not have adequate support in his home environment and was missing for more than four months, during which N.L. did not participate in services. N.L.'s conduct was "aggressive, sometimes violent." *Id.* at 51. Regarding the likelihood that N.L. would again flee the court's jurisdiction, the court stated, "I don't have any assurances that he's going to stay." *Id.* The trial also noted that N.L. had not attended school for months. In summary, the court explained:

> It's very clear to everybody here that [N.L.] does better when he's in a structured setting. I think it is in the child's best interest that he remain in a structured setting. In that structured setting he could receive the counseling, schooling[,] and the structure that he so dearly needs.

*Id.* The court then ruled, "I am going to place [N.L.] at the Department of Correction juvenile facility . . . ." *Id.*

4

N.L. now appeals his commitment to the DOC.

## Discussion and Decision

N.L. argues that the juvenile court erred in committing him to the DOC because it is not the least restrictive placement. He argues that he should have been placed on in-home detention or in a residential facility.

In determining whether the juvenile court properly placed N.L. in the DOC, we note that the choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will be reversed only if there has been an abuse of that discretion. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *Id.* An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. *Id.* Hence, the juvenile court is accorded wide latitude and great flexibility in dealing with juveniles. *Id.*

Indiana Code section 31-37-18-6 sets forth the following factors that a juvenile court must consider when entering a dispositional decree:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
> (1) is:
> > (A) in the least restrictive (most family like) and most appropriate setting available; and
> > (B) close to the parents' home, consistent with the best interest and special needs of the child;
> (2) least interferes with family autonomy;

(3) is least disruptive of family life;
(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

"Without question, the statute requires the juvenile court to select the least restrictive placement in most situations; however, the statute contains language that reveals that a more restrictive placement might be appropriate under certain circumstances." *J.S.*, 881 N.E.2d at 28-29. That is, the statute requires placement in the least restrictive setting only "[i]f consistent with the safety of the community and the best interest of the child." I.C. § 31-37-18-6. Thus, the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement. *J.S.*, 881 N.E.2d at 29.

This case presents one of those situations where the best interest of the child is better served by a more restrictive placement. N.L. is swiftly accumulating a significant juvenile record. Just two months after admitting to charges of theft, burglary, and possession of marijuana, the State filed a delinquency petition based upon two counts of intimidation and one count of harassment, as well as a petition to modify the terms of N.L.'s probation. Shortly thereafter, N.L. disappeared and did not return for more than four months. After his return, the State filed a second petition to modify N.L.'s probation based upon his failure to comply with the terms of his probation, which included resisting law enforcement. N.L. admitted to the allegations contained in the State's delinquency petition as well as those in the two petitions to modify his probation.

Miller, N.L.'s probation officer, testified that since being placed at a secure, structured youth facility, N.L. had behaved well. Miller explained that N.L. would benefit from a placement in the DOC, where such security and structure would continue. Miller also explained that although N.L. repeatedly refused to participate in services, he would be required to do so in the DOC, where educational, vocational, behavioral, and substance-abuse treatment programs would be available to him. Though N.L. states that in-home detention or placement in a residential facility would be preferable to him, the evidence supports the trial court's conclusion that N.L. requires the structure and security that the DOC can provide. Given N.L.'s juvenile history, his behavior while on probation, including his disappearance for more than four months, and his refusal to participate in services, we conclude that the juvenile court did not abuse its discretion in committing N.L. to the DOC for housing in a correctional facility for children.

Affirmed.

ROBB, C.J., and NAJAM, J., concur.