**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK F. JAMES**
Anderson Agostino & Keller, P.C.
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| K.S.B., A Child Alleged to be a Delinquent Child, | ) ) ) |
| Appellant-Defendant, | ) ) |
| vs. | ) No. 71A03-1112-JV-602 |
| STATE OF INDIANA, | ) ) ) |
| Appellee-Plaintiff. | ) ) |

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable Peter J. Nemeth, Judge
Cause No. 71JO1-1109-JD-484

**July 25, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

K.S.B. appeals the juvenile court's decision to place him in the custody of the Southwest Indiana Regional Youth Village ("Southwest") following his delinquency adjudication for intimidation. We affirm.

**Issue**

K.S.B. raises one issue on appeal, which we restate as whether the juvenile court abused its discretion in determining his placement.

**Facts**

On September 21, 2011, K.S.B. and his mother were in a heated argument at their home in St. Joseph County. K.S.B. was fifteen years old at the time and did not want to attend school or go to his scheduled doctor's appointment. His mother called the police. When the police arrived, they observed K.S.B. screaming, cursing, punching walls, and throwing objects. K.S.B. threatened to harm his mother while the police were present, and he was taken into custody. K.S.B. tested positive for marijuana at the time of his arrest.

On October 3, 2011, the State filed a delinquency petition alleging K.S.B. committed what would be intimidation as a Class A misdemeanor and criminal mischief as a Class B misdemeanor if committed by an adult. On October 12, 2011, pursuant to a plea agreement, K.S.B. admitted to the allegation of intimidation, and the State dismissed the criminal mischief allegation. At the guilty plea hearing, the juvenile court granted the probation department's request for risk and family assessment of K.S.B.

Dr. Warren Sibilla performed K.S.B.'s risk and family assessment for the Probation Department. The risk and family assessment demonstrated that K.S.B. resides with his mother, his mother's girlfriend, his paternal uncle, his older sister, and his older sister's two-year-old son. According to his mother, K.S.B.'s behavioral issues began when he was seven years old. For years, K.S.B. abused his mother and other members of the household verbally and physically. All of her attempts to use traditional punishment failed, and K.S.B.'s behavior continued.

His mother was unable to enforce any rules in the house. She unsuccessfully instituted a 10:00 pm curfew. K.S.B. recognized that there were no rules in the house, and he avoided any punishment by running away. He admitted that he did not attend school on a regular basis and that he often argued with his mother. He also admitted to assaulting his mother several times.

Beginning in May 2007, K.S.B. received psychiatric care through the Madison Center. He was at first given medication to control his behavior but stopped taking it because of a heart condition. He completed a day treatment program at Madison Center, and before the end of his treatment in 2008, he was diagnosed with anxiety disorder and attention deficit hyperactivity disorder.

Dr. Sibilla was particularly worried about K.S.B.'s violent tendencies and recommended immediate intervention. Dr. Sibilla found K.S.B. to be remorseful for his actions and insightful as to his mental health issues. K.S.B.'s IQ test revealed an average intelligence. Dr. Sibilla ultimately found that K.S.B. was at risk to commit further acts of

violence in the future. K.S.B. also admitted to abusing alcohol, marijuana, cocaine, and prescription pills, including vicodin, xanax, klonopin, and lithium. He acknowledges his substance abuse problem and wants assistance to address it.

During the family assessment, Dr. Sibilla noted that K.S.B.'s mother presented classic borderline personality disorder, and he determined, that until she was willing to acknowledge her role in K.S.B.'s behavior, K.S.B. should not return home. Dr. Sibilla believed that under no circumstances would K.S.B. be able to receive the proper mental health care while living at home.

As a result of Dr. Sibilla's assessment of both K.S.B. and the family, the probation department recommended that K.S.B. be placed in the residential treatment program at Southwest, which is located in Knox County. The juvenile court found that K.S.B.'s mental health and substance abuse needs could be treated there and ordered placement at Southwest. K.S.B. now appeals this placement.

**Analysis**

K.S.B. argues that the trial court abused its discretion by placing him in the custody of Southwest. "Subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition," the placement of a child determined to be delinquent is left to the sound discretion of the juvenile court. J.S. v. State, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). We review such a disposition under an abuse of discretion standard. Id. Such an abuse of discretion occurs when the juvenile court's action is clearly against the logic and effect of the facts and

4

circumstances before it or the reasonable, probable, and actual inferences drawn therefrom.  Id.

We recognize that the purpose of the juvenile process is vastly different from the criminal justice system.  Jordan v. State, 512 N.E.2d 407, 408 (Ind. 1987).  Rehabilitation is the goal of the juvenile process so children will not become criminals as adults.  R.H. v. State, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010).  Consequently, juvenile courts have a variety of placement choices for children with delinquent problems.  Id.

Indiana Code Section 31-37-18-6 provides:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> > (A) in the least restrictive (most family like) and most appropriate setting available; and
> >
> > (B) close to the parent's home, consistent with best interests and special needs of the child
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

K.S.B. contends that, by placing him in Southwest, the juvenile court failed to consider intermediate placements and therefore disregarded the statutory directive to select the least restrictive placement.  We disagree.

5

A policy of the least restrictive placement is essential in attaining the ultimate goal of rehabilitation, but safety, including that of the child, the family, and the public at large, may be a limiting factor in enacting this policy. See J.S., 881 N.E.2d at 28-29. K.S.B. has a violent history in his home. K.S.B. admitted to intimidating his mother, which would be a Class A misdemeanor if he were an adult. He admitted to assaulting his mother both verbally and physically on multiple occasions. His mother claims that he has also abused other members of the household. In his report, Dr. Sibilla worried about K.S.B.'s violent tendencies and recommended immediate intervention. Dr. Sibilla also determined that K.S.B. was likely to be violent in the future.

K.S.B.'s mother described her household as a place of fear, and we believe that there are serious safety concerns for both K.S.B. and his family. The safety concerns in this case require placement in a monitored facility.

Dr. Sibilla also concluded that K.S.B. would be unable to receive adequate treatment while remaining with his mother. Dr. Sibilla diagnosed K.S.B.'s mother with classic borderline personality disorder and recommended that she seek mental health treatment as well. She seems to be a contributing factor to K.S.B.'s mental health issues, and his removal from the home appears to be the most appropriate placement.

K.S.B. further argues that his placement is inappropriate because it is not the closest possible option to his home. This argument fails to take full account of K.S.B.'s needs at this time. K.S.B. has extensive and apparently severe substance abuse issues. His treatment requires a balance of both mental health and substance abuse counseling.

6

Few places are equipped to provide such intricate treatment. K.S.B. has not listed any alternative placement facilities, and the juvenile court again has broad discretion in determining placement.

The lack of stability at home as described in Dr. Sibilla's family assessment is certainly a large contributor to K.S.B.'s mental health issues. K.S.B.'s mother stated that she has stopped trying to provide normal consequences for K.S.B.'s actions because they do little to curb his behavior. She also stated that perhaps she involves police officers too often in disciplining K.S.B. This instability at home required the juvenile court to intervene and decide the appropriate and least restrictive placement for K.S.B. We find that Southwest is entirely appropriate for the treatment that K.S.B. requires.

**Conclusion**

The juvenile court did not abuse its discretion by placing K.S.B. at Southwest. We affirm.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.