**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

FILED

Sep 05 2014, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| M.M., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1312-JV-622 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Scott Stowers, Magistrate
Cause No. 49D09-1309-JD-2587

**September 5, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issue

The juvenile court ordered M.M. to be placed in a secure residential facility after M.M. violated a court-ordered curfew and was adjudicated a delinquent based on conduct that would be theft if committed by an adult. M.M. appeals her placement in a secure facility, raising one issue for our review: whether M.M.'s placement is contrary to Indiana Code section 35-42-3.5-4, which provides a victim of human trafficking may not be detained or otherwise penalized due to her status as a crime victim. Concluding the placement was not contrary to the statute and that the court did not abuse its discretion in placing M.M. in a secure residential facility, we affirm.

## Facts and Procedural History

On September 4, 2013, the State alleged M.M. was a delinquent juvenile based on conduct that, if committed by an adult, would constitute theft, a Class D felony. On September 27, 2013, a pre-trial hearing was held during which M.M. admitted to the theft allegation. At that hearing, the juvenile court ordered M.M. to observe a 7 p.m. curfew to be monitored by M.M.'s mother.

On October 18, 2013, the State filed a Motion for Order to Provide the Respondent a Psychological Examination and/or Medical Treatment under IC 31-32-12. Along with that motion, the State attached a copy of a probable cause affidavit written by Officer Laura Spicer of the Indianapolis Metropolitan Police Department. The motion and probable cause affidavit indicated that M.M. broke curfew and ran away from home on October 7, 2013, and that for approximately one week, M.M. prostituted herself while working for a woman named "Kiki."

A dispositional hearing was held on November 21, 2013. Prior to the hearing, the probation department filed its report recommending M.M. be placed at a secure residential facility. The State agreed with this recommendation. M.M. argued that a residential placement was inappropriate and that she should be permitted to return home with her mother. M.M. argued that therapy provided through Choices, Inc., which she began in September 2013, had been successful, and she should be allowed to continue participating in that therapy program. M.M. also argued that placement in a secure residential facility was contrary to law because of her status as a victim of human trafficking.

With respect to services M.M. could obtain if she were placed in secure detention at Fayette Regional Care Pavilion, Cathy Twombley, M.M.'s behavior therapist, testified that the opportunity to obtain therapy three times a week would be beneficial to M.M., and Twombley also indicated that the frequency of therapy there separated Fayette Regional Care Pavilion from other potential placements. Bryan Davis, who represented Choices at the dispositional hearing, said he believed Choices could continue to provide the necessary services such as those offered by Fayette Regional Care Pavilion, but he expressed concern about the possibility that M.M. might run away again or have difficulty successfully completing the services while living at home:

> CHOICES can provide the services that was [sic] just discussed. Our only concern is just [M.M.] staying in the home and being able to do these services. Um of course a residential facility would provide that secure location where she can have services given to her without being interrupted but our concern really is just her leaving out of the house and the things that go on during that time, is the biggest concern for CHOICES.

Transcript at 31.

On November 21, 2013, the juvenile court issued its dispositional order, adopting the probation department's recommendation and ordering that M.M. be placed at Fayette Regional Care Pavilion. M.M. filed a Motion for Presiding Judge to Reconsider Placement, which was denied. This appeal followed. Additional facts will be supplied as necessary.

<u>Discussion and Decision</u>

I. Standard of Review

The specific disposition for a juvenile adjudicated a delinquent is a matter within the sound discretion of the juvenile court, and that decision may be reversed only if there has been an abuse of discretion. <u>J.S. v. State</u>, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court. <u>Id.</u> In choosing a specific disposition for a juvenile, the court's discretion is subject to "statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition." <u>Id.</u>

Our General Assembly has set out the factors the juvenile court should consider when ordering a disposition:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
> (1) is:
> > (A) in the least restrictive (most family like) and most appropriate setting available; and
> > (B) close to the parents' home, consistent with the best interest and special needs of the child;

4

(2) least interferes with family autonomy;
(3) is least disruptive of family life;
(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind. Code § 31-37-18-6. The statute requires a juvenile court to choose the least restrictive setting; however, the statute also "recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." J.S., 881 N.E.2d at 29.

## II. M.M.'s Placement in a Secure Residential Facility

M.M. contends her placement was contrary to Indiana law and thus an abuse of the trial court's discretion. M.M. relies on Indiana Code section 35-42-3.5-4, which states that an alleged victim of human trafficking "may not be jailed, fined, or otherwise penalized due to having been the victim of the offense . . . ." Ind. Code § 35-42-3.5-4(a)(2). M.M. argues that her curfew violation is closely tied to her status as an alleged victim, and it is unfair to order a secure placement on that basis.

We do not believe the juvenile court's placement of M.M. runs afoul of Indiana Code section 35-42-3.5-4. M.M. was not placed in a secure facility because of her status as a victim; rather, the placement was a consequence of her admission to theft and adjudication as a delinquent minor. The record supports the juvenile court's decision to order secure placement. There is no question that M.M. is in need of therapy; both parties were in agreement on that matter throughout the proceedings before the juvenile court. M.M.'s previous therapist testified that placement at Fayette Regional Care

Pavilion would be beneficial due to the opportunity for frequent therapy sessions. In addition, the Choices representative believed M.M. would benefit from obtaining services at a residential facility without interruption, and he expressed concern that M.M. may have difficulty successfully completing services from home because of her proclivity to run away or encounter negative influences outside her home. This concern is supported by the record and by M.M.'s juvenile background, which includes numerous incidents of M.M. running away from home and getting into trouble. See Appellant's Appendix 50-52. It is apparent that the juvenile court considered M.M. to be a potential flight risk, and thus, it concluded that a secure facility such as Fayette Regional Care Pavilion was the appropriate location for M.M. to receive services and get back on track. The juvenile court's decision was not an abuse of discretion.

## Conclusion

Concluding the juvenile court's decision to place M.M. in a secure residential facility did not violate Indiana Code section 35-42-3.5-4 and that the decision was not an abuse of discretion, we affirm.

Affirmed.

BAKER, J., and KIRSCH, J., concur.