## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 15 2020, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katherine N. Worman
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.F.,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner* | January 15, 2020<br><br>Court of Appeals Case No.<br>19A-JV-945<br><br>Appeal from the<br>Vanderburgh Superior Court<br><br>The Honorable<br>Brett J. Niemeier, Judge<br><br>The Honorable<br>Renee A. Ferguson, Magistrate<br><br>Trial Court Cause No.<br>82D04-1903-JD-578 |

**Vaidik, Judge.**

# Case Summary

[1] D.F. appeals the juvenile court's order committing him to the custody of the Indiana Department of Correction (DOC). We affirm.

# Facts and Procedural History

[2] D.F. was born in April 2002. D.F.'s maternal grandmother has had guardianship of him since 2012 due to his mother's substance-abuse issues and his father not being involved in his life. Starting in 2014, D.F. has been heavily involved in the juvenile system. That year, D.F., then age twelve, received an informal adjustment for committing what would be Level 6 felony dealing in hashish oil if committed by an adult. Then, in 2015, D.F. was adjudicated a delinquent child for committing what would be Class A misdemeanor possession of a synthetic drug or lookalike substance if committed by an adult. He was placed on formal probation for six months under a suspended commitment to the DOC. D.F. later violated his probation and received a disposition of time served. In 2016, D.F. was adjudicated a delinquent child for committing what would be Level 4 felony burglary and Level 6 felony theft of a firearm if committed by an adult. The juvenile court took commitment to the DOC under advisement and placed D.F. on Intensive Supervision Probation. When D.F. later violated his probation, the court sent him to the DOC. D.F. was released from the DOC to parole and house arrest in late August 2017. Less than three months later, while still on parole and house arrest, D.F. committed acts that would be Level 3 felony armed robbery, Level 5 felony

battery by means of a deadly weapon, and Level 6 felony theft if committed by an adult. The court adjudicated D.F. a delinquent child and committed him to the DOC. D.F. was discharged from parole on March 1, 2019.

[3] Three weeks later, on March 22, 2019, an Evansville Police Department officer pulled over D.F., then age sixteen, for driving with no license. During the traffic stop that ensued, the officer found a handgun and marijuana in the car. On March 25, the State filed a petition alleging that D.F. was a delinquent child for committing acts that would be Class A misdemeanor dangerous possession of a firearm, Class B misdemeanor possession of marijuana, and Class C misdemeanor operating a motor vehicle without ever receiving a valid driver's license if committed by an adult. At the March 29 initial hearing, D.F. was appointed counsel and admitted possessing the handgun and driving without a license. The juvenile court adjudicated D.F. a delinquent child for these acts, and the State dismissed the marijuana allegation. The court then proceeded to disposition.

[4] The probation officer recommended that D.F. be committed to the DOC due to his "history with this Court, being beyond the control of his guardian, being a danger to himself by testing positive for an illegal street drug, . . . the serious nature of the offenses, and the fact that in past cases . . . we placed him on an informal adjustment, intensive probation supervision, house arrest, counseling, secure detention, commitment to the [DOC], and parole." Tr. p. 8. The State agreed with the probation officer's recommendation, highlighting that D.F. had just been discharged from parole three weeks earlier. Defense counsel,

however, proposed "two alternatives" to committing D.F. to the DOC, that is, placing him with his father or Job Corps. *Id.* at 9. The probation officer then testified that D.F. had never been placed with his father before, as "there's not been very much involvement from [him]." *Id.* The probation officer also testified that she had looked into Job Corps "as an alternative [to] re-commitment to" the DOC but concluded that it was not a good fit for D.F. "due to there being no accountability in the program, meaning that he's able to leave the program at any time." *Id.* at 10. The probation officer explained that the program had "little supervision" and that D.F. would not do well with little supervision. *Id.* D.F.'s father, who lives in Owensboro, Kentucky, testified that although D.F. had not lived with him in the recent past, he was willing to "take over the care and custody" of him once he found a bigger house. *Id.* at 12.

[5] In announcing its disposition, the juvenile court expressed its frustration with D.F., noting that it didn't know "what else to do" with him given all the other options that had been tried. *Id.* at 16. Having no "confidence that [D.F.] w[ould] be law abiding if [he wasn't] in the [DOC]," the court committed him to the DOC for a third time. *Id.*; *see also* Appellant's Amended App. pp. 39-40. The court added, however, that D.F. wasn't "a lost cause" since he wasn't eighteen yet and that no one was giving up on him; however, the court explained that "serious consequences" were warranted. Tr. p. 17.

[6] D.F. now appeals.

# Discussion and Decision

[7]  D.F. contends that the juvenile court erred when it committed him to the DOC. The specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that discretion. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008).

[8]  Indiana Code section 31-37-18-6 guides the court's disposition of a juvenile delinquent. In part, the statute states:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>
>> (B) close to the parents' home, consistent with the best interest and special needs of the child[.]

Ind. Code § 31-37-18-6. D.F. claims that commitment to the DOC is not "the least-restrictive and most family-like setting[]" for him and that he should have been placed with his father or Job Corps instead. Appellant's Br. p. 8.

[9]  Given the facts of this case, the juvenile court did not abuse its discretion in committing D.F. to the DOC. Since the age of twelve, D.F. has been given

numerous opportunities to rehabilitate himself, including an informal adjustment, probation, house arrest, two commitments to the DOC, and parole. Nevertheless, he has continued to violate both probation and parole and commit new offenses. Most notably, he committed the acts in this case just three weeks after being discharged from parole in the armed-robbery case. Although D.F. asked to be placed with Job Corps or his father, the court reasonably found that a Job Corps placement would be just "another one of those things that we try that I'm not confident you will fully take advantage of." Tr. p. 16. And the court had no reason to believe that placing D.F. with his father would sufficiently address D.F.'s serious behavior problems given his father's lack of involvement in his life up to that point. We agree with the juvenile court that D.F. left it with no other option than to commit him to the DOC. There is no abuse of discretion.

[10] Affirmed.

Riley, J., and Bradford, C.J., concur.