## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 05 2020, 10:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEY FOR APPELLEE

Steven Holser
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.V.V., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner.* | June 5, 2020 <br><br> Court of Appeals Case No. 19A-JV-2872 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Faith A. Graham, Judge <br><br> The Honorable Tricia L. Thompson, Magistrate <br><br> Trial Court Cause No. 79D03-1910-JD-231 |

**Mathias, Judge.**

[1] D.V.V., a minor child, admitted to committing acts that, if committed by an adult, would be Class A misdemeanor intimidation and Class B misdemeanor

criminal mischief. Based on these admissions, the Tippecanoe Superior Court found D.V.V. to be a delinquent child and awarded wardship of D.V.V. to the Department of Correction ("DOC"). D.V.V. appeals and argues that the juvenile court abused its discretion when it placed him in the custody of the DOC.

[2] We affirm.

## Facts and Procedural History

[3] On October 9, 2019, D.V.V. went to the home of his girlfriend's mother. While he was there, his girlfriend's father, J.M. arrived. The two got into an argument, and D.V.V. went into the garage, fetched a shovel, and threatened to hit J.M. with the shovel. After chasing J.M. with the shovel, D.V.V. attacked J.M.'s car with the shovel, resulting in a cracked windshield, a shattered back window, and a bent fender.

[4] D.V.V. was arrested and taken into custody that day, and the juvenile court held a detention hearing the following day. The court noted that D.V.V. had threatened to harm himself and, at the intake center, had injured himself by slamming his head into the wall. When taken to the hospital for treatment, D.V.V.'s blood alcohol concentration was 0.139. D.V.V. had also apparently attempted to cut his wrist. The court noted that D.V.V. was left unsupervised by his father for approximately twelve hours per day and ordered him to remain in custody.

On October 11, 2019, the State filed a petition alleging that D.V.V. was a delinquent child for committing acts that, if committed by an adult, would be Class A misdemeanor battery resulting in bodily injury, Class A misdemeanor intimidation, and Class B misdemeanor criminal mischief. At the October 15, 2019, initial hearing, D.V.V. admitted to the counts of criminal mischief and intimidation, and the remaining count was dismissed.

The pre-dispositional report summarized D.V.V.'s lengthy history of delinquency as follows:

> [D.V.V.] was first referred to the Juvenile Justice System in February of 2010 at the age of 7 for Criminal Recklessness FD in Allen County. It [was] alleged that [D.V.V.] threatened his mother with a knife. No action was taken in this matter. A second arrest was found in Tippecanoe County in November of 2010 when he was arrested for Battery F/D. [D.V.V.] was eight years old at the time. He was given a warning and was taken to Valle Vista. [D.V.V.] was arrested a second time in December of 2015 for Possession of Marijuana and Possession of Paraphernalia. [D.V.V.] was arrested a third time in January of 2016 for Delinquency Alcohol Violation. These two charges were still open when [D.V.V.] was arrested for a fourth time. [D.V.V.] was arrested for Delinquency Alcohol Violation, Resisting Law Enforcement F/6, Disarming a Law Enforcement Officer F/5, Battery by Bodily Waste F/5, Criminal Mischief M/B, Intimidation M/A and Battery Against a Public Safety Official F/6. [D.V.V.] was placed in secure detention on 1/21/2016 and remained there until 2/19/2016. [D.V.V.] was placed at Wernle Residential from 2/19/2016 until 8/5/2016. [D.V.V.] was arrested and placed in secure detention on 9/7/2016. [D.V.V.] was subsequently placed in the Department of Corrections [sic] in October of 2016. He was released in July of 2017. [D.V.V.] was arrested on 2/11/2018 for Battery against a Public Safety

Official F/6, Resisting Law Enforcement M/A Possession of Marijuana M/B and Minor Consumption. On 2/20/2018 [D.V.V.] was adjudicated on all charges except the marijuana charge. On 2/27/18 he was again sen[t] to DOC. [H]e was released 10/9/18. On 5/13/19 [D.V.V.] was arrested for Trespass MA. That case was dismissed. On 6/28/19 he was arrested for Delinquency Alcohol Violation, S [sic] and Illegal Consumption MC.

Appellant's App. p. 44.

[7] The juvenile court held a dispositional hearing on November 7, 2019. At this hearing, D.V.V.'s counsel requested that he be placed at Fairbanks Hospital for treatment. The juvenile probation officer, however, testified that Fairbanks Hospital was not an appropriate placement for D.V.V. because it provided only short-term treatment and detox services, whereas he believed D.V.V. needed long-term treatment. The probation officer recommended that D.V.V. be placed with the DOC because no long-term residential programs would accept D.V.V. The juvenile court agreed with the State that placement at Fairbanks was inappropriate and placed D.V.V. in the custody of the DOC. D.V.V. now appeals.

## Discussion and Decision

[8] D.V.V. argues that the juvenile court abused its discretion by placing him in the custody of the DOC. The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the discretion of the juvenile court. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). Accordingly, we will only reverse where the juvenile court has abused that discretion. *Id.* An abuse of

discretion occurs when the juvenile court's action is against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. *Id.* Thus, the juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles. *Id.* However, the juvenile court's discretion is subject to the following statutory considerations:

> *If consistent with the safety of the community and the best interest of the child*, the juvenile court shall enter a dispositional decree that:
>
> (1)  is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>
>> (B)  close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2)  least interferes with family autonomy;
>
> (3)  is least disruptive of family life;
>
> (4)  imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5)  provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind. Code § 31-37-18-6 (emphasis added).

Accordingly, while the statute requires the juvenile court to select the least restrictive placement in most circumstances, it also allows for a more restrictive placement where appropriate. *J.S.,* 881 N.E.2d at 28–29. That is, the statute

requires placement in the least restrictive setting only where "consistent with the safety of the community and the best interest of the child." I.C. § 31-37-18-6. "Thus, the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." *J.S.*, 881 N.E.2d at 29.

[10] D.V.V. argues that the juvenile court abused its discretion by rejecting his request to live with his mother while receiving treatment at Fairbanks Hospital, which he claims is the least restrictive, most appropriate setting consistent with D.V.V.'s best interest and the safety of the community. We disagree.

[11] D.V.V. has a history of delinquent behavior that has often included violence. He has been placed in less-restrictive placements, including mental health treatment facilities, which has not altered his delinquent behavior. He has also been placed with the DOC twice before. Still, he continues to behave in a delinquent manner. Although D.V.V. was accepted into a treatment program at Fairbanks, the juvenile court heard evidence that this program was not long-term and would therefore be inappropriate for D.V.V. He had also previously left his mother's home to live with his father because he did not agree with his mother's rules. And, for whatever reason, no other residential treatment facilities were willing to accept him into their programs. Thus, the juvenile court was faced with either placing D.V.V. into a treatment program at Fairbanks that was not well suited for him, or placing him with the DOC, where he could receive longer-term treatment. The juvenile court did not abuse its considerable discretion in opting for the latter.

D.V.V. argues that because he received substance abuse treatment during his prior placements in the DOC, yet continued to use illicit substances, it is unreasonable to believe that further treatment while in the DOC will benefit him. But this argument cuts both ways: if treatment in a highly restrictive, controlled environment such as the DOC has been unsuccessful, then the juvenile court could have reasonably concluded that treatment in a less-restrictive, short-term program such as Fairbanks would be unlikely to succeed.

D.V.V.'s citation to *E.L. v. State*, 783 N.E.2d 360 (Ind. Ct. App. 2003), is unavailing. In that case, we reversed a juvenile court's order placing a delinquent child with the DOC following an adjudication for disorderly conduct. *Id*. at 367–68. But the facts in *E.L.* stand in stark contrast to those present here. In *E.L.*, even though E.L. had previously been committed to the DOC, following her release, she had turned her life around: she remained out of the juvenile justice system for two years, actively participated in school, and worked with service providers in an effort to improve both her life and the life of her young child. *See id.* at 367. Under those facts and circumstances, we held that placing E.L. in the custody of the DOC was an abuse of discretion because it was not consistent with the safety of the community or E.L.'s best interests. *Id*. at 367–68.

In contrast, here, D.V.V.'s behavior did not improve following his release. He continued to commit violent delinquent acts even after being committed to the custody of the DOC. He failed to attend school regularly and disobeyed the rules set forth by his parents. Nor is there any indication that he was in any way

working to improve his life. Given D.V.V.'s history of violent behavior, toward himself and others, the juvenile court was well within its discretion to conclude that a less-restrictive placement was not consistent with the safety of the community or D.V.V.'s own interests. *See J.S.*, 881 N.E.2d at 29.

## Conclusion

The juvenile court did not abuse its discretion by ordering D.V.V. to be placed in the custody of the DOC, as a less-restrictive placement was not consistent with the safety of the community or D.V.V.'s best interests. We therefore affirm the judgment of the juvenile court.

Affirmed.

Riley, J., and Tavitas, J., concur.