## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 29 2020, 11:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| K.B., <br> *Appellant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee.* | July 29, 2020 <br><br> Court of Appeals Case No. <br> 20A-JV-72 <br><br> Appeal from the <br> Jennings Circuit Court <br><br> The Honorable <br> Jonathan W. Webster, Judge <br><br> Trial Court Cause No. <br> 40C01-1907-JD-11 |

**Altice, Judge.**

## Case Summary

[1] K.B. was adjudicated a delinquent child and placed on probation by dispositional decree. After he admitted to committing acts that violated the dispositional decree, the State sought to modify the disposition and place K.B. at the Indiana Boys School. All parties, including K.B., expressed agreement with the modification, and the juvenile court entered an order committing K.B. to the Indiana Boys School. K.B. argues on appeal that the State failed to demonstrate that less restrictive placements were unavailable, and, therefore, the decision to commit him to the Indiana Boys School was an abuse of discretion.

[2] We affirm.

## Facts & Procedural History

[3] In June 2019, fourteen-year-old K.B. was living at Lutherwood Children's Home (Lutherwood) pursuant to a Jennings County Department of Child Services (DCS) placement. On June 23, 2019, K.B. punched a staff person in the face twice. Lutherwood gave DCS thirty days to remove K.B. from the facility. On July 24, 2019, the State filed a delinquency petition alleging that K.B. committed an act that if committed by an adult would be Class A misdemeanor battery causing bodily injury.

[4] On July 24, 2019, a detention hearing was held. The State advised that the parties had reached an agreement in which K.B. would be held in the Clark County Juvenile Detention Center for six days, at which time he would either

be returned home or remain in detention, depending on his conduct. K.B.'s home was with guardians, J.P. and his wife A.P. (Guardians), who had raised K.B. since he was four years old.[1]

[5]    On September 17, 2019, the parties appeared for what was scheduled as a pretrial conference but turned into an admission and dispositional hearing. At the beginning of the hearing, Jennings County probation officer Andrew Judd advised the court that the parties had reached an agreement. Specifically, K.B. would enter an admission that he was a delinquent child in exchange for placement on probation for twelve months with various conditions including that K.B. was required to attend school, have no unexcused absences, and take all prescribed medications. In addition, K.B. would be placed at a therapeutic foster home in Portage, Indiana.

[6]    The court separately asked the guardian ad litem (GAL) Tamra Wright, DCS family case manager (FCM) Michelle Shepherd, and K.B.'s counsel Christopher Doran, whether they agreed with the proposed disposition, and each stated his or her agreement. The juvenile court explained to K.B. what rights he was giving up by admitting to the offense, including the right to appeal the delinquency findings and disposition. K.B. waived these rights and then admitted to punching the Lutherwood staff worker, a Class A misdemeanor battery if committed by an adult, and the court approved the agreed disposition.

---

[1] The record reflects that the whereabouts of K.B.'s father were unknown and his mother was believed to be homeless and living in Kentucky.

The next day the court issued a dispositional decree committing K.B. to the Indiana Boys School for twelve months, all suspended, during which time he would be on juvenile probation with the various conditions. K.B. did not appeal the dispositional decree.

[7] On October 25, 2019, the juvenile probation department filed a modification report requesting modification of the disposition decree and placement in the Indiana Boys School. The report alleged that K.B. had violated his probation by failing to go to school on six occasions, possessing a pocket knife and refusing to give it to his foster parent, running away from his foster home and only returning with law enforcement, and failing to take his medications. The therapeutic foster parent had submitted a letter on October 16, 2019 to the placement agency providing thirty days' notice that K.B. could no longer live at the foster residence due to concerns about the safety of others living there. The court set the matter for hearing on January 6, 2020 and ordered that K.B. be detained at the Clark County Juvenile Detention Center.

[8] On November 19, 2019, the juvenile court held a detention/placement hearing. Guardians initially were not present, but probation officer Judd advised the court that he had spoken with Guardians who indicated that K.B. could not return to their home due to violent behavior, and Guardians later arrived in court and confirmed that they were unwilling to take K.B. back into their home. Judd requested that K.B. remain in detention until a hearing could be held, and DCS counsel Harriett Cable agreed with that proposal. Doran asked the court for foster placement. The court agreed that foster placement was "a great idea

but do we have one?" *Transcript* at 22. Doran, Judd, and Cable each stated that he or she was not aware of any available foster placement. FCM Shepherd told the court that the therapeutic foster placement in Portage "was the only one we were able to find who would accept him and, um, there are not others that are willing to accept him that I have found." *Id.* at 23. A representative from the GAL office indicated that "typically, we feel like a foster home is a better placement" than detention, to which the court responded, "I think everyone in the room agrees with that . . . but the one we had is now gone." *Id.* The State's position was that K.B. violated probation and should go to the Indiana Boys School "if we can't find a better alternative" because the Boys School "has the wherewithal to treat him and to address his issues." *Id.* at 24. After Doran urged that K.B. had been in respite care previously, and K.B. believed he could do well there, FCM Shepherd stated she would contact the National Youth Advocate Program (NYAP), a placement agency, about any available respite care, and Judd noted, "NYAP kicked [K.B.] out of their program" previously. *Id.* at 25. The juvenile court determined that "unfortunately, there is nothing else I can do today other than send [K.B.] back to detention" until the next hearing, reminding K.B. that the parties would try to "get something worked out" but "so much is in your hands." *Id.* at 26. The court advanced the January 6, 2020 hearing to December 2, 2019.

[9] On December 2, the parties appeared for the modification of disposition hearing. K.B. admitted to violating the terms of the dispositional decree. The juvenile court asked, "Is there an agreed disposition?" and the State replied,

> Judge, there is. He'll be committed to the Indiana Boy[s] School. I think everybody's in agreement that he should, that's where he needs to be, and that it's the best option for treatment at this time.

*Id.* at 30. The court then asked the various parties to confirm their agreement to the proposal. Judd stated that probation agreed with that disposition and mentioned "the additional wrinkle" that K.B. was "kicked out of Clark County Juvenile Detention Center effective today." *Id*. Doran stated that he concurred with the disposition to Indiana Boys School, and then the court directly asked K.B., "[I]s that your agreement?" and K.B. replied, "Yes." *Id*. GAL Wright expressed that, "unfortunately, yes", the Indiana Boys School was the best and only option. *Id*. FCM Shepherd affirmed her position that it was the only suitable disposition. The juvenile court issued the modified dispositional order on December 2, 2019, ordering that "[b]y agreement of the parties, the child shall now be committed to the Indiana Department of Correction, Indiana Boys School" and directing that K.B. be transported from the Johnson County Juvenile Detention Center[2] to the Indiana Boys School on December 4, 2019. *Appellant's Appendix Vol. 2* at 62. K.B. received permission to file a belated appeal.

---

[2] Because K.B. could not return to the Clark County Juvenile Detention Center, K.B. was temporarily placed in the Johnson County Juvenile Detention Center until being moved to the Indiana Boys School.

# Discussion & Decision

[10] Initially, we address the State's argument that, pursuant to our Supreme Court's decision in *J.W. v. State*, 113 N.E 3d 1202, 1207 (Ind. 2019), K.B. cannot challenge his placement on direct appeal because he agreed to it. In *J.W.*, a juvenile admitted to committing what would be Class B misdemeanor false informing if committed by an adult and agreed to placement in the Indiana Department of Correction. "Despite the parties' consent judgment, . . . J.W. appealed, arguing that his agreed delinquency judgment should be set aside[.]" *Id.* at 1205. On transfer, our Supreme Court clarified that, just as adult criminal defendants cannot challenge the validity of a guilty plea on direct appeal, juveniles cannot immediately challenge on direct appeal any errors concerning their agreed adjudication. The Court issued the following "bright line rule":

> A juvenile's claim that his agreed delinquency adjudication is unlawful, along with any claim premised on the agreement's illegality, cannot be raised on direct appeal. Such claims must first be brought in the juvenile court in a post-judgment motion under Rule 60.

*Id.* at 1208. The Court dismissed J.W.'s appeal without prejudice and remanded to the trial court for further proceedings.

[11] The State urges that, here, "to the extent that [K.B.'s] challenge to the disposition as an abuse of discretion constitutes a claim that the agreed disposition was unlawful[,]" his direct appeal should be dismissed, or, alternatively, should we reach the merits, his claim was not an abuse of

discretion. *Appellee's Brief* at 9. K.B.'s appellate argument appears to be, not that an agreed adjudication was unlawful, but, rather, that he did not actually agree to the adjudication, i.e., his affirmative response to the court's "[K.B.], is that your agreement?" did not reflect agreement since he had no other options and that the placement was an abuse of discretion. *See Appellant's Brief* at 8 (stating that "[a]lthough he 'agreed' to be placed at the Indiana Boys School, he was given no real choice[,] as no alternative placements were offered or discussed"). Assuming for the moment that we agree with K.B. that he is not appealing an agreed adjudication – and we do not make that express determination – we find no error in the juvenile court's decision to commit K.B. to the Indiana Boys School.

[12]  The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the discretion of the juvenile court. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). Accordingly, we will only reverse where the juvenile court has abused that discretion. *Id*. An abuse of discretion occurs when the juvenile court's action is against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. *Id*. Thus, the juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles. *Id*. However, the juvenile court's discretion is subject to the following statutory considerations:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind. Code § 31-37-18-6.

[13] K.B. argues that the juvenile court's decision to place him at the Indiana Boys School was an abuse of discretion because "there was no evidence of efforts to secure a less restrictive placement." *Appellant's Brief* at 8. We disagree. Alternative placements, or more precisely, the lack thereof was discussed at both the November 19 and December 2 hearings. By November 19, K.B. was residing at the Clark County Juvenile Detention Center after the foster parent

on October 16, 2019 provided notice that K.B. needed to be removed in thirty days due to safety concerns. The juvenile court at the November 19 hearing asked the various parties about possible placements other than the Indiana Boys School, and Doran, Judd, and Cable each stated that they knew of no available less-restrictive options. FCM Shepherd told the court that the therapeutic foster placement in Portage "was the only one" she could find who would accept K.B. *Transcript* at 23. Effective December 2, K.B. was expelled from the Clark County Juvenile Detention Center due to his conduct. At the December 2 modification of disposition hearing, FCM Shepherd and GAL Wright affirmed that placement at the Indiana Boys School was the only suitable option. We find that the juvenile court's decision to commit K.B. to the Indiana Boys School was reasonable given the facts and circumstances before it and thus was not an abuse of discretion.

[14] Judgment affirmed.

Bailey, J. and Crone, J., concur.