## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 09 2016, 7:59 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| B.A.T., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | February 9, 2016 <br><br> Court of Appeals Case No. <br> 33A04-1506-JV-684 <br><br> Appeal from the Henry Circuit Court <br><br> The Honorable Mary G. Willis, Judge <br><br> Trial Court Cause No. <br> 33C01-1406-JD-37 |

**Altice, Judge.**

**Case Summary**

[1] B.A.T. appeals from the juvenile court's decision to modify his placement to the Department of Correction (DOC). B.A.T. argues that his commitment to the DOC was not the least restrictive and most appropriate placement.

[2] We affirm.

## Facts & Procedural History

[3] On June 26, 2014, B.A.T., who was fourteen years old, went into a rage at his grandmother's house. B.A.T. "turned his room upside down," yelled and cursed at his grandmother, grabbed a knife from the pantry, and stated that he would kill himself and everyone else in the house. *Transcript* at 7. B.A.T. then threw the knife down and ran out. His grandmother, who was his guardian, called the police. When they arrived, she told them that she feared B.A.T. and that she was unwilling to take custody of him. Over the previous month, B.A.T. also had had multiple encounters with police related to alcohol use, threatening others, and damaging property. B.A.T. was eventually apprehended and placed at the Delaware County Juvenile Detention Center.

[4] On July 10, 2014, the State filed a delinquency petition. The State made the following allegations: Count I, intimidation, a Class C felony if committed by an adult; Counts II and V, habitual disobedience of a parent; and Counts III and IV, illegal consumption, Class C misdemeanors if committed by an adult. The following day, the State filed an amended delinquency petition, adding Count VI, theft, a Class D felony if committed by an adult; and Count VII, possession of alcohol by a minor, a Class C misdemeanor if committed by an

adult. At an initial hearing on July 11, 2014, B.A.T. entered an admission to Count VI, which was based on his actions in assisting another person in stealing a bottle of tequila from a store. In exchange for his admission, the State dismissed all remaining allegations. The court ordered B.A.T. to undergo a full diagnostic evaluation at the Logansport Juvenile Correctional Facility after which he would be returned to emergency shelter care at the Youth Opportunity Center (YOC) pending the dispositional hearing.

[5] A dispositional hearing was held on August 28, 2014. The probation department recommended that, based on the results of his diagnostic evaluation, B.A.T. be placed at the YOC. The Court Appointed Special Advocate made this same recommendation regarding placement in her report. B.A.T. contested these recommendations for placement and argued that the recommended services were available on an outpatient basis. In response, B.A.T.'s probation officer testified as follows:

> My concern is that grandmother doesn't feel safe with him there and she has asked and wants [B.A.T.] to receive inpatient treatment. She does not feel that outpatient treatment is going to be intensive enough for him. I know that [B.A.T.] tends to minimize a lot of what's been going on here – that he was joking and things like that. I don't think [B.A.T.] understands the intensity of what he has done here that this is not just a joke. He needs the intensive treatment. I believe that what the DOC recommendation recommends, he won't get that kind of intensive treatment on an outpatient basis.

*Id.* at 28. The juvenile court noted that this was not B.A.T.'s first contact with the juvenile court system and that it had previously addressed custodial issues and family matters with B.A.T. The juvenile court found that it was in B.A.T.'s best interest to be placed at the YOC.

[6] At a review hearing on November 20, 2014, it appeared that B.A.T. was making progress. He was receiving community passes twice a week and was being granted a home pass for the Thanksgiving holiday. At the next review hearing on January 15, 2015, the court was informed that B.A.T.'s recent overnight visit with his grandmother on or about December 20, 2014, was problematic. During that visit, B.A.T. intimidated his grandmother into letting him drive her car even though he does not have a driver's license or a permit. B.A.T.'s grandmother also reported that he made an unauthorized purchase using her credit card. While at his grandmother's home, B.A.T. became extremely intoxicated and failed a drug test for benzodiazepines, opiates, and marijuana. As a result of his behavior, B.A.T.'s home passes were suspended. The trial court ordered that B.A.T. remain in placement at the YOC.

[7] At the April 16, 2015 review hearing, additional problems with B.A.T.'s behavior were noted. B.A.T. had been involved in an incident with another YOC resident and was placed in seclusion due to his "aggressive behavior." *Appellant's Appendix* at 36. On March 5, 2015, B.A.T. admitted that he had ingested another resident's Adderall. Later in March, B.A.T. had been given a two-hour, off-ground pass with his grandmother. Grandmother reported that B.A.T. made demands of her, asked for cigarettes, and told her "he was grown

up and he will do whatever he wants to do." *Id*. at 37. As a result, B.A.T.'s passes were again suspended. The juvenile court noted that B.A.T.'s eight-month placement at the YOC was one of the juvenile court's longest placements and that B.A.T. was not progressing. The court warned B.A.T., "if you can't make it at the YOC then you are going to go to the [DOC]." *Transcript* at 65. The juvenile court gave B.A.T. forty-five days at the YOC to demonstrate he could be trusted with trial home visits. A review hearing was set for June 11, 2015.

[8] On May 15, 2015, the probation department filed a verified petition for emergency change of residence and modification of the dispositional decree. A hearing on the petition was held on May 18, 2015. During the hearing, the court was informed that B.A.T.'s behavior had deteriorated and he was in complete noncompliance. Examples of his behavior were presented to the court. Specifically, on May 4, 2015, B.A.T. yelled at YOC staff who were conducting a routine search and then he balled up his fists and advanced on staff in an aggressive manner. Around this same timeframe, B.A.T. was involved in several other incidents during which he refused to do as he was instructed, claimed gang affiliation, and intimidated and verbally threatened staff and other residents.

[9] On May 12, 2015, B.A.T. refused to attend school and ran around telling YOC staff that he would not do "anything major" but that he would not "follow the rules." *Id*. at 73. He further explained to the staff that "he had to do something really big before anything would happen to him." *Id*. It was alleged in the

petition that "safety ha[d] become a big issue and YOC was struggling to keep control as he continues to incite other residents to participate in gang related activity." *Appellant's Appendix* at 46. The YOC did not want B.A.T. returned to the facility. The juvenile court found that B.A.T. had violated the terms and conditions of his placement, noted the emergency nature of the removal, and then ordered B.A.T. placed in the secure section of the Delaware County Juvenile Detention Center.

[10] The juvenile court held a modification hearing on May 21, 2015. B.A.T. admitted to violating the terms and conditions of his placement. B.A.T.'s therapist at the YOC testified that B.A.T. had "tried to fool the system, just do what [he] need[s] to do and get out of here without making any changes and going right back to the same old behavior." *Transcript* at 86. She also testified that she had done all she could for B.A.T., but he did not take sessions seriously as "[t]his is all a joke to him." *Id.* B.A.T.'s cottage manager testified that the YOC was not an appropriate place for B.A.T. and he also stated his belief that B.A.T. was not taking his placement seriously. B.A.T.'s behavior was disruptive and a danger to the other residents at the YOC.

[11] In its disposition, the court was sympathetic to the issues facing B.A.T., but noted his escalating noncompliance and delinquent behaviors during his placement at the YOC. The court rejected B.A.T.'s proposal for a ninety-day secure placement in the juvenile detention center because such placement would not provide B.A.T. with educational programming, services, or the ability to rehabilitate that was available through the DOC. The juvenile court

therefore entered a modified dispositional order making B.A.T. a ward of the DOC. B.A.T. now appeals.

## Discussion & Decision

[12] B.A.T. argues that the trial court abused its discretion in ordering his placement in the DOC when there was a less restrictive disposition available. Specifically, B.A.T. contends that the court should have accepted his proposal that he serve ninety days of secure detention "where he could have continued to receive treatment as opposed to punishment." *Appellant's Brief* at 6.

[13] Dispositional decrees where a juvenile is adjudicated a delinquent are intended to promote rehabilitation. *R.J.G. v. State*, 902 N.E.2d 804, 806 (Ind. 2009). This is in keeping with the legislative policy that juveniles are to be "treated as persons in need of care, protection, treatment, and rehabilitation." *Id*. The goal in the juvenile justice system is to rehabilitate juveniles so that they do not become adult criminals. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). Thus, the juvenile court is provided with a myriad of dispositional alternatives to permit the court to find the disposition that best fits the unique and varying circumstances of each child's problems. *Id*. Because of the need to tailor dispositions for each individual child, the juvenile court is accorded great latitude and flexibility in its choice of specific dispositions for a juvenile adjudicated delinquent. *M.T. v. State*, 928 N.E.2d 266, 268 (Ind. Ct. App. 2010), *trans. denied*.

[14] To this end, the choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will be reversed only if there has been an abuse of that discretion. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *Id*.; *see also* I.C. § 31-37-18-6. An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. *J.S.*, 881 N.E.2d at 28.

[15] In arguing that a less restrictive placement was appropriate, B.A.T. notes the few instances where service providers and even the court recognized that he had made some progress toward his rehabilitation goals. B.A.T. ignores the vast majority of the record wherein his destructive behaviors all but tied the court's hands with regard to his placement. B.A.T. has been placed in the YOC for nine months and has refused to participate in multiple opportunities to engage in rehabilitation. B.A.T. continued to threaten and intimidate staff and other residents, was often aggressive toward others, made gang signs, and refused to follow instructions of staff because he believed he did not have to follow the rules. He even flaunted his disobedience to staff saying he would continue to be disruptive and misbehave and there was nothing they could do to stop him.

[16] Each time B.A.T. was given some freedom for progress he had seemingly made, he quickly resorted back to his destructive behaviors. According to

B.A.T.'s therapist, he was manipulating the system and did not take his placement seriously. B.A.T.'s grandmother does not feel safe around B.A.T. and would not take custody of him. B.A.T. was placed in the YOC with intensive therapy. Because of B.A.T.'s disruptive behavior, the YOC will not accept him back into the facility. B.A.T.'s claim that he now has the ability to live with his grandmother after he completes a ninety-day secure placement, that he will comply with probation, and that he will attend therapy is not supported by the record. The juvenile court afforded B.A.T. numerous opportunities and even warned him that continued noncompliance would result in his placement in the DOC. Based on the record before us, we cannot say the juvenile court abused its discretion when it placed B.A.T. in the DOC. Given his history, his aggressive and destructive behaviors, and his complete disregard for authority, the juvenile court was left with no other alternative.

[17] Judgment affirmed.

[18] Robb, J., and Barnes, J., concur.