# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 26 2018, 9:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief, Criminal Appeals
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.G., *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, *Appellee-Petitioner.* | September 26, 2018 <br><br> Court of Appeals Case No. 18A-JV-1146 <br><br> Appeal from the Marion Superior Court <br><br> The Hon. Gary K. Chavers, Judge *Pro Tempore* <br><br> Trial Court Cause No. 49D09-1703-JD-439 |

**Bradford, Judge.**

# Case Summary

In March of 2017, then-fifteen-year-old J.G. admitted to possessing a firearm, was found to be a juvenile delinquent, and was placed on probation with a suspended commitment to the Department of Correction ("DOC"). Over the course of the next few months, J.G. had several positive drug screens, was suspended from school twice, and generated two GPS alerts for unauthorized absence from home detention or school. As 2017 turned to 2018, J.G.'s misbehavior escalated in seriousness and frequency. On February 28, 2018, J.G. was arrested in Jackson County and charged with what would be driving without a license and possession of a stolen firearm if committed by an adult. In the previous month, J.G. had (1) missed a probation appointment, (2) run away for two days, and (3) received twelve disciplinary referrals at school. On April 17, 2018, the juvenile court ordered J.G. committed to the DOC, a placement J.G. contends represents an abuse of discretion. Because we disagree, we affirm.

# Facts and Procedural History

At around 1:30 a.m. on Thursday, March 23, 2017, Indianapolis police officers received a radio dispatch about suspicious persons loitering near a Mexican restaurant on North High School Road. *J.G. v. State*, 93 N.E.3d 1112, 1115 (Ind. Ct. App. 2018), *trans. denied*. The officers soon apprehended fifteen-year-old J.G. and another juvenile, O.D., in a nearby apartment complex. *Id.* at 1116. The officers initially decided that the juveniles had committed no crimes

and decided to take them to their homes. *Id.* One officer drove O.D. home and spoke with O.D.'s mother and her boyfriend. *Id.* Based on this conversation, the officer returned with O.D. to the apartment complex, where O.D. directed the officer to a handgun hidden under a bush. *Id.* When asked, J.G. eventually admitted that he had possessed the handgun found under the bush. *Id.* at 1117.

[3] On March 23, 2017, the State filed a petition alleging that J.G. committed what would be Class A misdemeanor dangerous possession of a firearm and Class A misdemeanor carrying a handgun without a license if committed by an adult. On April 21, 2017, the juvenile court issued true findings as to both charges. The juvenile court conducted a dispositional hearing on June 1, 2017, merged the two adjudications, and placed J.G. on probation with a suspended commitment to the DOC. The juvenile court ordered J.G. to complete the Project Life program,[1] complete a home-based case-work program, have no contact with anyone of whom his mother did not approve, and have no direct or indirect contact with O.D. Although J.G. completed the Project Life program by August 31, 2017, J.G. had a positive screen for marijuana on June 8, 2017, and had more positive screens on October 6, 2017, and March 8, 2018.

[4] Meanwhile, J.G. was unable to stay out of trouble. On September 21, 2017, J.G. was placed on probation due to an incident of criminal mischief which

---

[1] Project Life is described in the record as a "targeted intervention program [that] will educate youth on the nature of violent crimes and the consequences that can arise from involvement in such activities." Appellant's App. Vol. II p. 82.

occurred while he was in detention. On September 28, 2017, J.G. was suspended from school for one day after he was found gambling in the restroom with other students. On September 28, 2017, J.G. generated an alert on his GPS monitor when he left school at 12:01 p.m. and returned home at 3:29 p.m. J.G. was in a car with a friend at the time, and they stopped at several gas stations and homes. On October 11, 2017, J.G. generated an alert on his GPS monitor when he stopped and visited a friend for twenty-one minutes on the way home from school. On October 25, 2017, the juvenile court ordered J.G. to complete five hours of community service due to the school suspension and the GPS alerts. On October 27, 2017, J.G. was suspended from school for two days due to an altercation with another student.

[5] On January 31, 2018, this court ordered that the true finding for carrying a handgun without a license be vacated due to double jeopardy concerns. *J.G.*, 93 N.E.3d at 1125. On March 1, 2018, the State petitioned for modification of the dispositional decree, alleging that J.G. had been arrested on February 28, 2018, and charged with what would be driving without a license and possession of a stolen firearm if committed by an adult in Jackson County; had missed a probation appointment on February 13, 2018; had left school and was missing for two days until he was arrested; and had a number of behavioral issues at school, such as cursing, showing disrespect, and refusing to complete work, resulting in twelve disciplinary referrals in the previous month. At a hearing on March 20, 2018, J.G. admitted that he had twelve disciplinary referrals at school during the month of February and that his misconduct at school violated

the terms of his probation. The juvenile court asked that available services for J.G. be further explored in light of his recent arrest in Jackson County and the dramatic change in his scores over the prior months on assessments of his risk to reoffend.

[6] A modification report prepared by probation on April 4, 2018, indicated that J.G. refused to accept responsibility for his behavior at school or home or in Jackson County, he had multiple disciplinary issues while in detention, and his conduct "indicates a lack of motivation for change." Appellant's App. Vol. II p. 194. Because J.G. did not have psychiatric issues to be addressed, probation concluded that a residential treatment program was not appropriate. Because of J.G.'s easy access to firearms, the increase in his level of risk to reoffend, and his history of noncompliance with prior services, probation recommended placement in the DOC along with a variety of specific programming and therapies for him during the wardship. On April 11, 2018, probation informed the juvenile court that J.G. had been interviewed for placement at DePaul Academy but was denied by that program due to indications that he "does not show amenability to treatment[.]" Tr. Vol. II p. 24.

[7] On April 17, 2018, the director of admission at Transitions Academy, a residential facility where struggling juveniles receive counseling and treatment, testified at a hearing. The director explained that J.G. had been accepted to the program at Transitions Academy. J.G.'s attorney mentioned that J.G.'s father had died in January of 2017 and renewed J.G.'s request to be placed in a community supervision program or alternatively in Transitions Academy.

[8] Following the director's testimony, the juvenile court expressed doubt about J.G.'s sudden willingness to perform the actions and participate in programs that were similar to programs from which he had failed to benefit during the preceding year. The juvenile court noted that since J.G. had been adjudicated delinquent the prior year for possession of a firearm and ordered to participate in Project Life and case management programs since June 1, 2017, he had performed poorly in programs and in school, returned positive drug screens, left home without permission, and been arrested in another case also involving a firearm. While Transitions Academy focused on both mental health and delinquent conduct and had accepted J.G., the juvenile court found that J.G.'s history of noncompliance in prior, similar programs made such a placement inappropriate. The juvenile court found that J.G.'s best interests and the safety of the community made placement with the DOC most appropriate. The juvenile court awarded guardianship of J.G. to the DOC until he turns twenty-one unless the DOC releases him sooner.

# Discussion and Decision

[9] J.G. contends that the juvenile court abused its discretion in ordering him committed to the DOC. A juvenile court is accorded "wide latitude" and "great flexibility" in its dealings with juveniles. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). "[T]he choice of a specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that

discretion." *Id*. The juvenile court's discretion in determining a disposition is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least-harsh disposition. *Id*. An abuse of discretion occurs when the juvenile court's action is "clearly erroneous" and against the logic and effect of the facts and circumstances before it. *Id.*

[10] The goal of the juvenile process is rehabilitation rather than punishment. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). "Accordingly, juvenile courts have a variety of placement options for juveniles with delinquency problems, none of which are considered sentences." *Id.* Indiana Code section 31-37-18-6(1)(A) provides that "[i]f consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that is in the least restrictive (most family like) and most appropriate setting available." "[T]he statute contains language that reveals that a more restrictive placement might be appropriate under certain circumstances." *J.S.*, 881 N.E.2d at 29. The law requires only that the disposition selected be the least restrictive disposition that is "consistent with the safety of the community and the best interest of the child." *D.S. v. State*, 829 N.E.2d 1081, 1085 (Ind. Ct. App. 2005).

[11] In light of J.G.'s increasingly troubling behavior, we conclude that the juvenile court did not abuse its discretion in ordering J.G. committed to the DOC. Over the course of approximately one year of probation, J.G. has failed numerous drug screens, generated numerous GPS alerts, and been suspended from school

for gambling and fighting. In August of 2017, J.G. completed Project Life, and his misbehavior became more and more frequent as 2017 ended and 2018 progressed. Indeed, J.G.'s February of 2018 arrest for driving without a license and illegal possession of a firearm came at the end of a month during which J.G. missed a probation appointment, received twelve disciplinary referrals at school, and went missing for two days after running away from home. Rather than acknowledge the seriousness of his misdeeds, J.G. blamed school personnel and his home-based case worker for "snitching" on him regarding his issues at school. Appellant's App. Vol. II p. 163. School officials have reported that J.G. wanders the halls, does not focus on school work, is disruptive in class, gambles with other students on school property, and engages in arguments and physical altercations with other students.

[12] While J.G. notes that he exhibited some improvement prior to the modification hearing, it is important to put this improvement into context. First, probation noted that J.G. had been disciplined several times over the course of approximately one month while in detention, tending to undercut any claim of significant progress. Moreover, to the extent that J.G.'s behavior actually did improve immediately prior to the hearing, he was being held in detention and receiving the kind of structured environment and services that he would receive in the DOC. Finally, even though J.G. seemingly contends that his behavior was improving even prior to his detention, this is not borne out by the record, which instead indicates that his behavior had become considerably worse in the month before his arrest in Jackson County.

[13]     J.G. also notes his need for grief counseling and substance-abuse treatment and contends that these services could best be provided at home or Transitions or on an outpatient basis. J.G.'s contentions about the best place for him to receive these services, even assuming a need for them, are not supported by evidence in the record and are therefore insufficient to establish an abuse of discretion. Finally, J.G. seems to suggest that commitment to the DOC has the effect of punishing him for his mother's behavior, specifically, her allegedly poor parenting. If anything, however, mother's alleged shortcomings as a parent support the juvenile court's placement of J.G. out of the home, and this argument, frankly, contradicts his argument that he should receive grief counseling and substance-abuse treatment at home. Given J.G.'s history of resistance to authority, probation violations, drug use, and involvement with firearms, consisting as it does of incidents that seem to be increasing in severity and frequency, he has failed to establish that the juvenile court abused its discretion in ordering him committed to the DOC.

[14]     The judgement of the juvenile court is affirmed.

Bailey, J., and Mathias, J., concur.